UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| LINDA DALLINGER | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 4:04-CV-93-PRC |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
|     Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 5], filed by the Plaintiff, Linda Dallinger, on December 27, 2004, and a Memorandum of Plaintiff [DE 22], filed by Ms. Dallinger on July 22, 2005. Ms. Dallinger seeks judicial review of a final decision of the Defendant, the Commissioner of the Social Security Administration ("Commissioner"), in which Ms. Dallinger was denied Disability Insurance Benefits under Title II of the Social Security Act. For the following reasons, the Court denies Ms. Dallinger's request to reverse and remand the decision of the Commissioner.

**PROCEDURAL BACKGROUND**

On August 8, 1995, Ms. Dallinger filed an application for a period of disability and disability insurance benefits alleging disability as of December 21, 1994, due to depression, back and leg pain, leg numbness, and fibromyalgia. The Social Security Administration initially denied her application on November 15, 1995, and denied her application upon reconsideration on February 12, 1996.

Ms. Dallinger then filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). A hearing before ALJ Andrew Tranovich was conducted on January 12, 1998, in Indianapolis, Indiana. At the hearing, testimony was heard from Emily Giesel, M.D., a medical

expert. On September 4, 1998, a supplemental hearing was held at which Ms. Dallinger, Dr. Giesel, and Hershel M. Northern, a vocational expert ("VE"), testified. Attorney Charles J. Myers represented Ms. Dallinger at both hearings.

On October 20, 1998, the ALJ issued a de novo decision, finding that Ms. Dallinger was not disabled because she retained the residual functional capacity ("RFC") to perform a limited range of light work[1] and remained capable of performing her past relevant work as a small parts assembler. The ALJ considered Ms. Dallinger's testimony, age, education, past work experience, RFC, and the testimony of the VE and MD in making the following findings:

(1)   The claimant met the disability insured status requirements of the Social Security Act on December 21, 1994, the date the claimant stated she became unable to work, and continues to meet them through at least December 31, 1999.

(2)  The claimant has not engaged in substantial gainful activity since December 21, 1994.

(3)  The medical evidence establishes that the claimant has "severe" medically determinable impairments consisting of fibromyalgia and mild osteoarthritis of the hands, cervical spine and lumbar spine, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. There is no record evidence of a "severe" medically determinable mental impairment.

(4)   The claimant's allegations as to the severity of her symptoms and limitations, including her complaints of pain, are not supported by or consistent with the objective medical evidence and other evidence of record and are not credible to the degree that she is precluded from performing all forms of substantial gainful activity.

(5)   The claimant has the residual functional capacity to perform work-related activities except for work precluded by the limitations set forth by Drs. A.A. Smith and Emily L Giesel at Exhibit 28, page 2 and Exhibit 30, page 5.

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

2

> (6) The claimant's past relevant work as an assembler of small products did not require the performance of work-related activities precluded by the above limitations.
>
> (7) The claimant's impairments do not prevent the claimant from performing her past relevant work.
>
> (8) The claimant has not been under a "disability" as defined in the Social Security Act at any time through the date of this decision (20 CFR 404.1520 (e)).

R. at 384-385.

On November 5, 1998, Ms. Dallinger filed a Request for Review of Hearing Decision with the Appeals Council, which remanded the case to an ALJ on February 21, 2001. The Appeals Council noted, in part, that the ALJ's decision "[did] not address the medical opinion expressed by A.A. Smith, M.D., a treating source (Exhibit H), that [Ms. Dallinger's] impairments may meet section 1.05C. of the Listing of Impairments (Appendix 1, Subpart P, Regulations No. 4)." R. at 393. The Appeals Council then instructed that, on remand, the ALJ "will take appropriate action to resolve the issue(s) cited above. . . . " R. at 393.

On September 26, 2002, a new administrative hearing was held before ALJ Tranovich in Indianapolis, Indiana. At the hearing, Ms. Dallinger appeared and testified, represented by Attorney Charles Myers. Also testifying at the hearing were Dr. Giesel; David G. Jarmon, a licensed clinical psychologist; and Gail Corn, a VE. On November 19, 2002, the ALJ denied Ms. Dallinger's claim, finding that Ms. Dallinger was not disabled because she could perform her past relevant work as a small parts assembler, as well as a significant number of other jobs. The ALJ made the following findings:

> (1) The claimant met the special earnings requirement of Title II of the Social Security Act on December 21, 1994, the date the claimant stated she became unable to work, and continued to meet them through September 30, 2000.

3

(2) The claimant has not engaged in any substantial gainful activity since December 21, 1994.

(3) The medical evidence establishes that the claimant has fibromyalgia, history of migraines, voices subjective complaints of low back pain, depressive disorder, mild, and personality disorder, not otherwise specified, but that the claimant does not have an impairment or combination of impairments listed in or medically equal to an impairment listed in Appendix 1, Subpart P, Regulations No. 4.

(4) The claimant's subjective complaints of any totally debilitating pain and/or any other totally debilitating symptomatology, from December 21, 1994, through September 30, 2000, are not supported by the objective medical evidence of record, nor by the treatment notes and records from the claimant's treating physicians, nor by the reports from the consultative examiners, and are not credible.

(5) From December 21, 1994, through September 30, 2000, the date the claimant last met the special earnings requirement of Title II of the Social Security Act, the claimant had the residual functional capacity to occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk, with normal breaks, for a total of about six hours in an eight hour workday; sit, with normal breaks, for a total of about six hours in an eight hour workday; and her ability to push and/or pull was limited to the same extent as her ability to left [sic] and/or carry; the claimant should avoid climbing of ladders, ropes, or scaffolds; could occasionally climb ramps and climb stairs; and could occasionally balance, stoop, kneel, crouch, and crawl; the claimant had no manipulative limitations, visual limitations, or communicative limitations; the claimant should avoid concentrated exposure to extreme cold, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation, and hazards such as heights and machinery; and the claimant had no limitations or restrictions regarding exposure to extreme heat, noise, or vibration; the claimant's ability to follow work rules; relate to co-workers; use judgment; understand, remember and carry out simple job instructions; maintain personal appearance; and relate predictably in social situations, are all good, the claimant's ability to function in these areas not being limited by any mental impairment; the claimant's ability to deal with the public; interact with supervisors; deal with work stresses; sustain an ordinary routine without special supervision; maintain attention-concentration; perform activities within a schedule; perform at a constant pace without an unreasonable number and length of rest periods; understand, remember and carry out detailed job instructions; behave in an emotionally stable manner; and demonstrate reliability, are all fair, the claimant's ability to function in these areas being limited but satisfactory; and the claimant is able to manage money in her own best interest.

(6) From December 21, 1994, through September 30, 2000, the date the claimant last met the special earnings requirement of Title II of the Social Security Act, the

claimant's activities of daily living were only moderately restricted; the claimant had only mild difficulties in maintaining social functioning; the claimant had only moderate difficulties in maintaining concentration, persistence, or pace; and the claimant experienced one episode of decompensation, due to any emotional, mental, psychological, or psychiatric impairment. Note, Exhibit 20, pages 1-8, and Exhibit N, pages 1-12 refer to the same episode of decompensation. The claimant had another episode of decompensation in 1973.

(7) From December 21, 1994, through September 30, 2000, the date the claimant last met the special earnings requirement of Title II of the Social Security Act, the claimant could have performed her past relevant work as a sedentary unskilled small parts assembler, as she actually performed the occupation.

(8) The claimant was fifty-two years one month of age on September 30, 2000, the date the claimant last met the special earnings requirement of Title II of the Social Security Act, which is defined as closely approaching advanced age, and has obtained a GED.

(9) The claimant does not have any skills which are transferable to the skilled or semi-skilled work functions of other work.

(10) Section 404.1569 of Regulations No. 4, and Rules 202.13, 202.14, 202.20, and 202.21, Table No. 2, Appendix 2, Subpart P, Regulations No. 4, indicate a finding of not disabled is appropriate from December 21, 1994, through September 30, 2000, the date the claimant last met the special earnings requirement of Title II of the Social Security Act.

(11) Even if the claimant was not able to perform a full and complete range of light work activity, there were a significant number of unskilled light occupations existing throughout the state of Indiana which the claimant could have performed from December 21, 1994, through September 30, 2000, the date the claimant last met the special earnings requirement of Title II of the Social Security Act. Examples of such occupations include light unskilled assemblers, 5,000 jobs; light unskilled inspectors, 3,000 jobs; and light unskilled hand packagers, 3,000 jobs.

(12) The claimant was not disabled as defined in the Social Security Act at any time from December 21, 1994, through September 30, 2000, the date the claimant last met the special earnings requirement of Title II of the Social Security Act.

R. at 27-28. Ms. Dallinger filed a Request for Review of Hearing Decision, which was denied by the Appeals Council on November 29, 2002. Therefore, the ALJ's decision of November 19, 2002, is the final decision of the Commissioner.

On December 27, 2004, Ms. Dallinger timely filed her Complaint with this Court, seeking review of the final decision pursuant to 42 U.S.C. § 405(g) and alleging that the ALJ's decision was not supported by substantial evidence and was premised on errors of law. On March 7, 2005, the Commissioner filed an Answer. On July 22, 2005, Ms. Dallinger filed a Memorandum of Plantiff. On August 17, 2005, the Commissioner filed a Memorandum in Support of the Commissioner's Decision, arguing that the ALJ's decision was not premised on errors of law and was supported by substantial evidence. Ms. Dallinger did not file a Reply Brief.

Both parties have consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Thus, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**FACTS**

**A.  Background Information**

Ms. Dallinger was born in 1948, and was 52 years old at the time of the ALJ's decision. Ms. Dallinger obtained a GED, and her past relevant work was as a small parts assembler.

**B.  Medical Evidence**

On August 20, 1991, Eun-Yong Kim, M.D., performed a CT scan of Ms. Dallinger's lumbar spine, which revealed a localized bulge of the posterior margin of the intervertebral disc on the left side.[2] Dr. Kim noted that this bulge deforms the antero-lateral aspect of the dural sac, and stated that

---

[2] In Ms. Dallinger's memorandum, she focused only on her back impairment, arguing that it met Listing 1.05C. She specifically stated that "a review of her fibromyalgia, history of migraines, depressive disorder and personality disorder [was] not necessary." Plaintiff's Memorandum at 2. Thus, this Court's decision is confined to a review of the evidence concerning Ms. Dallinger's back impairment.

the changes are those of a herniated intervertebral disc. Dr. Kim further noted that the L5-S1 interspace appeared to be mildly narrowed, which is associated with some degenerative changes.

A radiology report on January 18, 1996, revealed findings that the cervical spine had "[s]light narrowing at the C5-C6 level" and the lumbar spine had "disc space narrowing at the L5-S1 level with associated anterior and posterior osteophyte formation." R. at 193.

On January 25, 1996, a somatosensory evoked response (SER) procedure performed on Ms. Dallinger yielded abnormal results with bilateral waveform degradation consistent with bilateral involvement of ascending sensory pathways from the legs.

On January 29, 1998, Dr. Anthony A. Smith, a board certified neurologist, responded to questions from Ms. Dallinger's attorney that related to Ms. Dallinger's condition and made the following statement:

> It would appear that [Ms. Dallinger] would meet most of the elements of listing 1.05C in that she has a vertebrogenic disorder in the form of a herniated nucleus pulposus with symptoms persisting for at least three months and expected to last 12 months. Subpart one of the listing calls for pain, which she described in the back, hips, and legs, muscle spasm, which is present in the low back, and limitation of motion in the spine, which was caused by the muscle spasm that she had in her lumbosacral spine. Subpart two calls for appropriate radicular distribution of significant motor loss. On gait and station testing it was found that her gait was slightly slow, that it was stiff, and that it was antalgic. Subpart two also calls for sensory and reflex loss. [Ms. Dallinger] had sensory changes in the L5, S1 dermatomes consistent with spinal nerve root irritation in this area. She had symmetric reflexes but it should be noted that she had bilateral findings on the clinical neurological examination.

R. at 287-88.

On March 12, 1998, Dr. Smith again examined Ms. Dallinger. In a letter to the Medical Services Director of the Disability Determination Bureau, Dr. Smith summarized Ms. Dallinger's

past relevant medical history as well as the results of the examination. A complete neurologic examination was performed, which indicated moderate paraspinous muscle spasm. Further, Dr. Smith noted that Ms. Dallinger had a slightly slow, stiff, antalgic gait, abnormal sensation in the L5-S1 distribution, normal motor function, and normal to slightly reduced reflexes. There was a reduction in cervical extension, lateral flexion, and rotation, and dorsolumbar forward flexion, extension, and lateral flexion that ranged from minimally limited to one-half of normal. Dr. Smith assessed Ms. Dallinger's ability to work and found that she could sit six hours, three hours at a time, stand four hours, two hours at a time, and walk four hours, two hours at a time. Ms. Dallinger could never lift or carry over twenty pounds; however, she could lift or carry up to twenty pounds occasionally and up to ten pounds frequently. Further, Ms. Dallinger could perform simple grasping and fine manipulation; however, she could not push or pull arm controls. Ms. Dallinger could occasionally bend, crawl, climb, and reach, but could not squat. Ms. Dallinger was mildly restricted from working at unprotected heights and driving automotive equipment, being around moving machinery, and being exposed to marked changes in temperature and humidity.

      On November 18, 2001, Dr. Giesel, board certified in internal medicine and rheumatology, completed a residual physical functional capacity assessment to determine Ms. Dallinger's ability to work from December 21, 1994, through September 30, 2000. Dr. Giesel found that during that period, Ms. Dallinger could occasionally lift or carry up to twenty pounds, could frequently lift or carry up to ten pounds, and could stand, walk, or sit for six hours. Ms. Dallinger could not climb ladders, ropes, or scaffolds, but she could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Ms. Dallinger had to avoid concentrated exposure to extreme cold, wetness, humidity, fumes, odors, dusts, gases, poor ventilation, hazardous machinery, and heights. On

September 26, 2002, Dr. Giesel testified as a medical expert to these findings at the final hearing before the ALJ.

### C. The ALJ's Decision

After considering the evidence, the ALJ conducted the five-step analysis set forth at 20 C.F.R. § 404.1520. At steps one and two, the ALJ concluded that Ms. Dallinger had not engaged in substantial gainful activity since December 21, 1994, and that Ms. Dallinger has "fibromyalgia, history of migraines, voices subjective complaints of low back pain, depressive disorder, mild, and personality disorder, not otherwise specified . . . ." R. at 26. At step three, however, the ALJ found that Ms. Dallinger "does not have an impairment or combination of impairments listed in or medically equal to an impairment listed in Appendix 1, Subpart P, Regulations No. 4." R. at 26. At step four, the ALJ found that from December 21, 1994, to September 30, 2000, Ms. Dallinger retained the RFC to perform a modified range of light work. After comparing her RFC with the requirements of her past work, the ALJ determined that Ms. Dallinger was not under a disability as defined under the Act, because she remained capable of performing her past relevant work as a small parts assembler. At step five, the ALJ found that Ms. Dallinger was able to perform a significant number of jobs in the economy. The ALJ determined that Ms. Dallinger's subjective complaints of any totally debilitating pain and/or any other totally debilitating symptomatology were not supported by medical evidence and were not fully credible.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will only reverse if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford*, 227 F.3d at 869; *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and under the correct legal standard. *See Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). If an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

**DISABILITY STANDARD**

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(e), (f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 404.1520(a)(4). The Seventh Circuit has summarized the sequence as follows:

> (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past relevant work; and (5) whether the claimant is capable of performing work in the national economy. Under the five-part sequential evaluation process, "[a]n affirmative answer leads either to the next step, or, on Step 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.

*Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001) (citations omitted) (alterations in original); *see also* 20 C.F.R. § 404.1520(a)(4)(i)-(iv); *Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004). At the fourth and fifth steps, the ALJ must consider an assessment of the claimant's RFC. "The RFC is an assessment of what work-related activities the claimant can perform despite [his]

11

limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). The ALJ must assess the RFC based on all the relevant evidence of record. *Id*. at 1001 (citing 20 C.F.R. § 404.1545(a)(1)). The claimant bears the burden of proving steps one through four, *see Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995), whereas the burden at step five is on the ALJ, *see Zurawski*, 245 F.3d at 886.

An ALJ must articulate, at a minimum, his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski*, 245 F.3d at 888. The ALJ must build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young*, 362 F.3d at 995 (quoting *Scott*, 297 F.3d at 595); *see also Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

## ANALYSIS

In her Brief, Ms. Dallinger contends that the ALJ erred as a matter of law in determining that she is not entitled to benefits and issued a decision that was not supported by substantial evidence.[3] Specifically, Ms. Dallinger argues that the ALJ failed to give any explanation as to why Ms.

---

[3]Although Ms. Dallinger argues in the opening paragraph of her Memorandum that the ALJ's decision was not supported by substantial evidence, nowhere in the body of her memorandum does she support her contention with arguments, facts, or law. Rather, she limits her argument solely to the alleged error of law that the ALJ did not evaluate whether Ms. Dallinger met listing 1.05C as ordered by the Appeals Council. Therefore, this Court need not address whether the ALJ's decision is supported by substantial evidence.

12

Dallinger does not meet listing 1.05C, and failed to address Dr. Smith's statement on January 29, 1998, that Ms. Dallinger "[appeared to] meet most of the elements of listing 1.05C . . .", R. at 287-88, as ordered by the Appeals Council.  Therefore, Ms. Dallinger argues, the ALJ failed to build an accurate and logical bridge from the evidence to his conclusion in determining that Ms. Dallinger does not meet listing 1.05C.  Ms. Dallinger requests that the Court reverse and remand the ALJ's decision.  In response, the Commissioner contends that the ALJ complied with the Appeals Council's mandate and properly evaluated Dr. Smith's opinion that Ms. Dallinger might meet the requirements of Listing 1.05C.

> Section 1.05, as it existed in 1998, lists disorders of the spine and provides, in relevant part:
>
> C. Other vertebrogenic disorders (e.g., herniated nucleus puplosus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:  1. Pain, muscle spasm, and significant limitation of motion in the spine; and 2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

20 C.F.R. pt. 404, Subpt. P, App. 1, § 1.05C (1998).[4]

Having reviewed the ALJ's decision, the Court finds that the ALJ followed the Appeals Council's direction and considered Dr. Smith's January 29, 1998 statement, in response to Attorney Myers' questions, that Ms. Dallinger "[appeared to] meet *most* of the elements of listing 1.05C . . . ." R. at 287-88 (emphasis added).  The ALJ's written decision demonstrates that he afforded less weight to Dr. Smith's statements on January 29, 1998, and the record supports the ALJ's determination.

---

[4] *See* 20 C.F.R. pt. 404, Subpt. P, App. 1, § 1.04 (2005) for the current version of this provision.

A treating physician's opinion is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(d)(2); *Boiles*, 395 F.3d at 426 (citing *Clifford*, 227 F.3d at 870); *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). "More weight is given to the opinion of treating physicians because of their greater familiarity with the claimant's conditions and circumstances." *Gudgel*, 345 F.3d 467, 470 (7th Cir. 2003) (citing *Clifford*, 227 F.3d at 870; 20 C.F.R. § 404.1527(d)(2)). However, an ALJ is entitled to discount the medical opinion of a treating physician if it is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as the ALJ "minimally articulate[s] his reasons for crediting or rejecting evidence of disability." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Dixon*, 270 F.3d at 1178; *Clifford*, 227 F.3d at 871) (quoting *Clifford*, 227 F.3d at 870) (internal quotation marks omitted). The ALJ must discuss, at some level, how the evidence of record contradicts the treating physician's diagnosis. *See Gudgel*, 345 F.3d at 470.

First, after an examination of Ms. Dallinger on March 12, 1998, Dr. Smith concluded that Ms. Dallinger could perform a range of light work. This opinion is inconsistent with his January 29, 1998 opinion that she met most of the elements of Listing 1.05C. The ALJ included a full summary of both of Dr. Smith's opinions in his decision. *See* R. at 14-15. Because Dr. Smith's January 29, 1998 opinion is inconsistent with his more recent March 12, 1998 opinion, which was given after completing an examination of Ms. Dallinger, it was not erroneous for the ALJ to rely on the latter and afford less weight to the former.

Second, Dr. Smith's January 29, 1998 opinion is inconsistent with other substantial medical evidence of record. In her September 25, 2002 testimony, Dr. Giesel, a consulting physician,

14

indicated that Ms. Dallinger's physical impairments did not meet or equal any impairment or combination of impairments listed in Appendix 1, Subpart P, Regulation No. 4, which is consistent with Dr. Smith's March 12, 1998 opinion but not his January 29, 1998 opinion. The ALJ relied on Dr. Giesel's opinion in his decision.

The ALJ also considered objective medical evidence, stating that "[w]hile a CT scan of Ms. Dallinger's lumbar spine on August 20, 1991, at the L4-L5 level revealed a localized bulge of the posterior margin of the intervertebral disc on the left side, a more recent x-ray on March 23, 1998, showed only degenerative changes at L5-S1." R. at 18. The ALJ also noted that Dr. Smith's report on March 12, 1998, indicated that the claimant's motor function was normal and reflexes were 1-2+ and symmetric. Further, the ALJ recognized that the May 21, 1998 opinion of Dr. Drennen, a consultative physician, indicated that

> [Ms. Dallinger's] sensation to light touch seemed to be intact, deep tendon reflexes, including biceps, radialis, patellar, and Achilles were 2+ and equal bilaterally. She was able to walk on her heels and toes without difficulty. Straight leg raising at 90 degrees did elicit some pain. However, there is no documentation that straight leg raising test was performed in both the sitting and supine position.

R. at 12 (internal citations omitted).

Finally, the ALJ noted the absence of other evidence that would correlate with listing 1.05C. He found that there was no evidence of spinal cord compression, nerve root compression, motor loss, atrophy with associated muscle weakness, muscle weakness, or reflex loss.

This Court finds that the ALJ evaluated whether Ms. Dallinger met Listing 1.05C, as ordered by the Appeals Council, by reconsidering Dr. Smith's January 29, 1998 statement and the other evidence of record. The ALJ provided a logical bridge between the evidence of record and his decision that Ms. Dallinger does not meet listing 1.05C.

**CONCLUSION**

For the foregoing reasons, the Court finds that the ALJ did not commit an error of law in determining that Ms. Dallinger does not meet listing 1.05C.  Therefore, the Court **DENIES** the Memorandum of Plaintiff [DE 22].  The Court **REAFFIRMS** the ALJ's decision in all respects.

SO ORDERED this 22nd day of February, 2006.


s/ Paul R. Cherry
MAGISTRATE JUDGE CHERRY
UNITED STATES DISTRICT COURT

cc:	All counsel of record